Thank you, Your Honors. May it please the Court, Pratik Shah for Appellant Gila River Indian Community. With the Court's permission, I'd like to reserve five minutes for rebuttal. You got it. This appeal arises from a suit over an implied easement on the community's reservation. Plaintiffs sought to expand that easement to accommodate the hypothetical sale of their property to a hypothetical developer. This Court need not reach the merits because the scope of easement claim should have been dismissed for lack of Article III standing upon this Court's prior determination in 2010 that plaintiffs had suffered no injury in fact with respect to that claim. It's at 1074 of the prior decision. But for the happenstance of an unrelated claim that soon after mooted out on remand, this Court's no-injury judgment would have ended the case without any further proceedings at all. Indeed, plaintiffs initially agreed on remand that no live issues remained for adjudication. That's at ER 318. That was in January 2012 over a year after remand from this Court's first decision. Instead of dismissing the scope of easement claim, however, the District Court adjudicated it based on an alleged injury arising solely after remand. Given the baseline requirement of Article III jurisdiction at all stages of a suit, any post-remand injury in and of itself could not have retroactively cured that pre-existing jurisdictional defect. Now, plaintiffs attempt to salvage the judgment below by suggesting that post-remand facts enabled them either to assert a brand new scope of easement claim or to acquire standing on their old claim. But plaintiffs never sought to amend their six-year-old complaint to add a purportedly new claim, nor did they file a supplemental pleading pursuant to Rule 15d to allege any of those new jurisdictional facts, despite the District Court's invitation to do so on remand. Plaintiffs thus cannot The District Court didn't think it was necessary, obviously. Is it just a question of form? Well, Your Honor, it's only a question of form to the extent that the baseline rule does not allow for any exceptions, right? This Court has carved out a narrow exception in the Northstar case, which is the primary case they rely on. When you're talking about Article III jurisdiction, it goes to the power of the Court. The equitable exceptions are disfavored. Now, this Court did carve out, and we fully accept Northstar, as a narrow to cure that jurisdictional defect. Here, we are far outside the bounds of Northstar for a couple of reasons. First of all, no Rule 15d pleading ever filed. Second of all, they hang their hat on, the only thing they hang their hat on, is the pretrial order. A pretrial order is very different than a Rule 15d supplemental pleading. By its terms, Rule 15d envisions curing defects in a complaint. The main point of a pretrial order is to set the prospective agenda for a trial. Another big difference between pretrial orders and Rule 15d's are that pretrial orders come towards the end of the case, after all discovery, after years of stuff have happened, whereas the 15d, for example, in Northstar, came three months after the initial filing. An assignment had been garnered, 15d filed, and the Court said that would have been an empty formality to make them file a new suit. Here, we have anything but. This would be the worst possible vehicle to extend Northstar, because the opposite of Northstar, where it would have been an empty formality, anything but here. Significant consequences if they would have had to follow the normal procedure of filing a new complaint, and that's because of the tribal sovereign immunity issue. And they themselves raised that to the District Court. That's an excerpt of Record 305, and they said, look, if we're actually forced to file a new complaint, it will likely be foreclosed by sovereign immunity. That's quoting from their pleading at ER 305. So we are not in the Northstar situation. Did their statement speak to the possibility of a supplemental pleading in the same action? They didn't want to file a brand new lawsuit. I'm not sure that that was meant to speak to the question of whether an amended pleading or a supplemental pleading would have caused that consequence. No, I think that's fair, Your Honor. However, two responses to that. One, they never actually filed a supplemental pleading, either an amended complaint or a 15D pleading, which was the hook in Northstar. Your client never complained about that? Well... I mean, in a long-running case, I mean, this seems to be a very peculiar situation procedurally. The case had been going on for a long time, and then Lyon argues the circumstances changed. Well, I can recall back in the day being involved in cases where the litigation evolved some distance from the original pleadings. That's one of the reasons for the final pretrial order, to really tee up what's at issue. And in the case where there's been this kind of Your client wanted to close this lawsuit and force the filing of another one if it could, because that would make the sovereign immunity argument a lot better. Did your client ever claim, gee, we don't know what's at issue here, we don't know that the proposed development or sale of the property, because that's really what they're talking about, but enhanced enormously in value if they had this easement, we don't know that's what's being fought over here so they should be required to file an amended pleading or supplemental pleading of some time to make that clear. I don't see anything in the record that suggests there was uncertainty about that being at issue. Well, Your Honor, not uncertainty as to the claim. In fact, what we have here, we don't have a new claim at all, which is their primary submission, right? We had a scope of easement claim that was adjudicated in 2010. What changed was the factual predicate for that claim. They said, now we want to do a less-to-sense development. And there shouldn't be any doubt about that. If you look at reply brief page 6 of our reply brief, in their own pleading, they say, although this Court and the Court of Appeals previously held that the dispute over the scope of the implied easement was not yet ripe, the facts on remand have changed substantially such that the issue is now ripe for review. So we're talking about the same claim. They say facts have changed, and so now it is now ripe. So their argument that this is somehow a new claim, I don't think is accurate. But I'm not sure why that advances you, because there's no doubt about that claim being involved in the litigation from the outset. What has changed is the question of whether it's ripe. Right. Which means that since 2005, which is when this complaint had happened, confirmed in 2010 by this Court's decision, there had been no injury in fact with respect to that claim. There was no Article III jurisdiction with respect to that claim for seven years. That is — that goes to the power of the Court's authority to adjudicate the claim. Well, but one of the things that's peculiar about this case is there's no doubt about there being jurisdiction over disputes between these parties on a whole array of things. The particular piece here about seeking declaration with regard to the easement had not ripened to the point where there was an actual case, but that the parties belonged in court with each other was not really in dispute. I looked and didn't find a case that spoke quite so clearly to that. Well, Your Honor, we do cite — it's established Supreme Court precedent and circuit precedent that you have to have standing with respect to each claim in a lawsuit. It's not just good enough for Article III purposes that a court has jurisdiction over a case. That's part of it. But what I didn't find is a precedent that spoke to maybe this combination of ingredients, where you have claims between the parties as to which there was unquestionably jurisdiction, a claim as to which this Court concurred with the — or affirmed the district Court's determination was not yet ripe, and then events that caused the ripening or alleged — allegedly caused the ripening — excuse me — of that claim. And that's what we have here. And I couldn't find any case that gave me that combination of factors. Well, Your Honor, I guess two responses. One is, I think there is a lot of cases that say once a court loses — once a court finds there's no injury in fact — and I know using the term ripeness, I think, in the constitutional sense here. But you can't have a claim that's constitutionally not ripe, which essentially means there's no injury in fact, which is what — those were actually the words this Court used in the 2010 opinion, that there was no injury in fact with respect to that claim. That cannot — unlike prudential ripeness — that cannot be later cured by the fact — by the happenstance that as the suit develops, a new injury develops that now makes that claim ripe. That's good enough for prudential ripeness, but as soon as a court finds that there is no injury in fact with respect to a claim, that cannot ripen. Only prudential ripeness can ripen. Once there's no article in injury in fact, that's — the Court doesn't have authority to adjudicate the claim. Now the narrow exception that this Court carved from Morongo and it's — this Court's long line of cases holding that was for a 15D pleading. It says, look, it would be an empty formality in a situation like North Star. And in North Star it said the rationale was, look, this had happened three months after filing. They got the assignment. It would be an empty formality to redo the suit. Here, we don't have that. Well, how would it not be an empty formality here? Because of the tribal sovereign immunity issue. That would be true for filing a new lawsuit. But the question I raised earlier is, is that the case for filing an amended complaint or a supplemental pleading within the same lawsuit? Well, the empty formality is, do you allow them to either amend the complaint or supplement it between that scenario and a new action? Because the new action is what you would normally have to do if you have an injury that happens after you file your suit, right? Well, no, because North Star says that you can file a supplemental pleading. Right. I'm sorry. Maybe I'm just not making myself clear. So what the Court in North Star said is, between the choice of filing a supplemental pleading and a new lawsuit, that would be an empty formality. So the same choice in this suit is not an empty formality. Simply allowing them to amend versus filing a new suit is not an empty formality. By their own admission at ER 305, and it's true, it has huge consequences because if they filed a new suit, you would have tribal sovereign immunity. Now forget the new suit, if that's not convincing you. At least they have to file a motion to amend the complaint or supplement the pleading under Rule 15. Part of the reason why you have to do that, and this Court recognized it in North Star, is because one of the considerations in granting that leave is, does it prejudice the other side? And had they actually filed a motion for 15A or 15D to amend the complaint or supplement it, surely the community would have objected precisely on this ground, that in fact we are prejudiced by simply allowing them this late in the lawsuit to supplement or amend their complaint by a newly arising injury. They have to do the normal thing, file a new lawsuit and the prejudice, the consequences are, tribal sovereign immunity is not waived once and for all, for all claims for all time. It is an exceedingly narrow waiver. And we would have said that we would be prejudiced by granting at this late date a Rule 15A or 15D extension, so we never had a chance to argue the prejudice. So there's no, and that's why in North Star this Court is explicit. We go no further than saying that in the unique circumstance of a Rule 15D pleading that alleges the factual predicate that was missing at the time of the complaint, we don't go any further than that in extending the extension. There is not a case from any court, any district court, any court of appeals, the U.S. Supreme Court that has ever retroactively cured Article III jurisdiction based upon a pretrial order. It does not exist. They have not cited it. The only case they cite about pretrial orders having any impact on jurisdiction is Rockwell, that Supreme Court case. That is about the exact opposite situation, the entirely unremarkable proposition that if you have an amended complaint that takes away jurisdiction, the court can look to that. And that's what happened in Rockwell. It looked at the amended complaint and the pretrial order in that case. It defeated jurisdiction. It wasn't Article III. It was a false claim suit. And it said we looked at that to defeat jurisdiction. Well, of course you can look to a subsequent pleading to defeat jurisdiction because a court must have jurisdiction at all times. Not a single case from any court for good reason, because you don't have the protection of the district court looking at it, evaluating it for prejudice, nor would there be a basis to obliterate the longstanding Article III predicate along an equitable line. When you're talking about Article III jurisdiction, you're talking about the power of the court not subject to these sort of equitable exceptions. And the other point I would make on this is a month after North Star, this court issued the Yamada decision. Same situation where you had no Article III injury in fact at the time of suit. Facts changed such that there was now a predicate for an Article III injury. And this court a month after North Star said no, that's not good enough. And there was no Rule 15D pleading in that case. There was nothing that satisfied the very narrow exception in North Star. And so we don't come close to satisfying North Star here. And as I said, for the unique feature of this case, the tribal sovereign immunity case, which would have severely prejudiced or made a significant difference, not an empty formality, this would be the worst possible vehicle to make the unprecedented step made by no other court to extend exceptions to Article III jurisdiction to a pretrial order. Now, to the extent there is any doubt that that is the right answer in this case, this is relying on prudential ripeness grounds. And the Supreme Court did that, for example, in the Ohio Forestry decision, which is cited in our brief where they were faced with either an Article III standing or a prudential ripeness. And they decided the case on prudential ripeness grounds and said we don't need to address the Article III standing issue because they're both jurisdictional issues. The court said it could do that. It's sort of akin, they didn't use this phraseology, but sort of akin to the constitutional avoidance question. You can avoid the Article III question on prudential ripeness grounds. And I think the predicate for the prudential ripeness ruling in this case, and I'll just say this, and then I'll try to reserve the rest of my time for rebuttal, is the 2000, the different part of the 2010 decision at 1079, the very end of the opinion, where they're talking about a different claim, the community's regulatory authority over Section 16. And the court finds that claim not ripe on prudential grounds. And it says, look, there are no current plans to sell Section 16 to a developer or to construct a housing development. We would submit that still remains true today. And all that's changed, the plaintiffs now say that they want to do a less dense housing development that would comply with the current zoning. I'll reserve the rest of my time, if I may. May it please the Court, my name is Joel Nomkin, and with me is Paul Eckstein, and we represent the appellee owners of Section 16. I'd like to start by addressing the Article III and ripeness issues, and then touch briefly on the summary judgment questions. I'm happy to leave the trial court's findings and conclusions to the briefs, given the clearly erroneous standard, but of course, we'll address any questions you've got. So turning to the jurisdictional issue, it's clear that there is subject matter jurisdiction here. So as I understand the community's argument, it does not dispute that there is now an injury that the owners of Section 16 suffered when the community refused their development plan, the plan they created after the remand, to develop Section 16 under the jurisdiction according to its current zoning of one house per one and a quarter acre. The community refused to let the owners proceed with that plan, because they refused to allow Murphy Road to be paved and easements to be installed. I understand that, but I'd like you to address Mr. Shaw's enthusiastic recitation of the fact that there's no jurisdiction in Section 16, that there's no law to support creating Article III jurisdiction after the court has found that it doesn't exist, without the benefit of a supplemental pleading. I'm happy to address that. Is there any case that allows that? Well, I think Northstar is right on point. In fact, I think our situation is much different, much stronger than Northstar. In Northstar, at the time the plaintiffs filed their complaint, they had no injury in fact. They had no standing, because they didn't have an assignment of the claim that they were trying to litigate. They didn't get that assignment until over three months later. In our case, as Judge Clifton noted, when this case started in federal court in 2005, there's no question, but there was injury in fact and standing in a case or controversy. So what's happened is that after that initial dispute arose on remand, a new grievance developed. And that new grievance can certainly be pled as a supplemental pleading or an amended complaint or the equivalent that we have here, which is a pretrial order. It's that equivalent that would be extending the law beyond what it's ever been before, right? Your Honor, I don't think you're extending the law. And I think if we're focusing only on the title of the piece of paper, we're doing exactly what Northstar said not to do. Northstar said we shouldn't elevate form over substance. We should look at what happened. We should look at the facts. In our case, with all deference to Judge Clifton, I think there actually was a new claim that developed after remand. You don't need to go that far to decide in our favor, but I think there was. Well, the claim is one that this Court, I mean, it's odd because we have so many cases I usually don't remember them. I started reading the facts of this case and said, wait a minute, I've seen this before. And seven years ago I sat, I don't remember which courtroom, but one of these courtrooms, and heard about this. And this Court said, District Court's right. This isn't right. There's no case or controversy here. So at that point in time, there was no Article III jurisdiction over that claim. Now, it may be a new claim that uses all the same words. That is, we're entitled to get a declaration as to what kind of easement we got here. Can we pave a road? How is that really different? It's different, and I think in a fundamental way. At the time the Court looked at the case or controversy issue the first time around, there were no development plans in place. They'd fallen through, because what the owners had wanted to do was to improve Section 16 at three houses per acre. They couldn't get permission from Pinal County, and they had no plans. They had no plans to improve the easement. They had no plans to develop the property, and that's why there was no case or controversy. Well, take a look at what happened after remand. After remand, it's indisputable that the owners did develop a plan to develop the property in a very different way, and would have required a very different use of the easement. And so they go to the community. Okay. So except your characterization, it's new. Certainly the facts had changed, even though the relief sought was pretty much the same. But then why should the case be considered to include something that didn't even exist until years after the complaint was originally filed? Well, I think that's perfectly consistent with the policies behind Rule 15, as well as the liberal joinder rules we have of Rule 18. But if you'd moved for leave to file an amended complaint, wouldn't you have run into the sovereign immunity argument? Well, first of all, Your Honor, I believe that the community has already waived the sovereign immunity argument the first time around by filing its proof of claim. Well, yeah, but we're now pretty far removed from that. And is that a get out of jail free card? If the community really... So the purpose of it... It seemed like a good idea at the time for them to file the claim within the bankruptcy. Very good. We're pretty far removed from that now. Why should that be treated as a waiver? So the reason why we would ask... We have complaints in the first place. Complaints don't create claims. Claims are created by facts, right? So we have facts that have developed a new kind of claim. Is there... The reason why we want to complain is to make sure that the other side knows is on notice, and so they can defend against that claim. And you, of course, have to assert the claim in the complaint. Well, there's no question but that the community was on notice of what the claim was on remand. That's what the entire proceeding was about on remand. And if the community wanted to raise sovereign immunity at the time of the pretrial order, they were perfectly free to do it, but they didn't. There's no... I mean, it wasn't as if it was a surprise to them that these were the issues that were going to be litigated. But counsel, could they... If you were to prevail in this appeal, could the tribe, under your view, now raise sovereign immunity in some way in this case? I think if we prevail in this appeal, that's the end of the case, Your Honor. No, I'm sorry. If you were to prevail on the standing issue... Put aside the merits of the case. Let's say we agree with you that there is standing to proceed in this case. Could they somehow interject sovereign immunity at this point? I think at this point, no, they've waived it, Your Honor. So now, if we were to disagree with you and find no standing and require you to file a new lawsuit... That's the elephant in the room. Sure, they're going to raise sovereign immunity as they said they will. So if that's the case, then we keep talking about form over substance, but it seems like we're putting substance over form. I mean, in one version of the lawsuit, they can raise sovereign immunity, which is a very... That's a big elephant, right, in the room. And in one other version, they can't. So how is the tribe's position putting form over substance? So the issue of sovereign immunity is not a question of subject matter jurisdiction. I mean, it may be an issue that they could have raised, but the issue of whether or not there was injury in fact and the issue of whether there's sovereign immunity are two different questions. No, I appreciate that. But if you're trying to... If the argument is, well, look, Northstar says let's not put form over substance. And that's why we can carve out an exception to Article 3 in a sense. That's the whole argument, a large part of that case. It seems to me in this case, there is a real difference. There's a real consequence on the merits. There's a practical... Yeah, there is a practical outcome that could flow from the courts taking jurisdiction as this court did and deciding the case. Sure. I mean, the community did not raise sovereign immunity in the second trial. There was a second trial. If they wanted to raise it, they could have raised it before that trial began. But I can understand. I mean, I can hear the response. They didn't because there was not an obvious place to do it. If there had been a motion for leave to amend, then they'd jump up around. And clearly it was brought up then because I don't know if it was you or a colleague or whatnot, but it was openly acknowledged to the court that sovereign immunity is one of the elephants in the room too. So they don't have that. They have what is a continuation of a lawsuit in which the district court, affirmed by this court, had decided that sovereign immunity was practical because there had been a waiver for the part of the lawsuit that came along at that point in time. Now we've got this new claim. And so, again, this combination of ingredients is one I can't find any place else, but trying to work it through from their perspective, I see them saying, how do we do that? Your Honor, again, I think the practical answer is at the time of the pretrial order, they were able to state whatever issues they wanted to state. They didn't raise sovereign immunity in the pretrial order. And I think, you know, if we take a look at the policy behind North Star, I think you have to look at Rule 15d and the advisory committee notes behind it because I think it's right on point. The advisory committee comments to the rule say that the plaintiff should not be, quote, needlessly remitted to the difficulties of commencing a new action, even though events occurring after the commencement of the original action have made clear the right to relief. That's what North Star embraces. It's also Matthew versus Diaz, where there wasn't subject matter jurisdiction at the time. A complainant was challenging a denial of Medicare benefits. They hadn't filed the application until later, until after they filed the lawsuit. And the court said, even though there wasn't an amended complaint in that case, they didn't file the formal piece of paper, the court said, OK, I mean, we know that the application was filed in order to trigger federal jurisdiction and we'll take the case. It's not that a unique situation in that sense, Your Honor. I don't also understand why we shouldn't treat the pretrial order in this case as the equivalent of an amended complaint. I mean, that's, if I'm going to quote the Rockwell case, the Supreme Court case said that, quote, inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim. That's pretty clear. So if you treat this new grievance that we have developed after remand as a new claim or a new issue, however you want to characterize it, it's deemed to amend the pleadings at that point. I also think you can look at this as a question of rightness. And I know in your original opinion in this case, you do cite the need for a case for controversy, but I think it's important to look at rightness principles as well, because certainly rightness doesn't depend on what the facts were at the time the complaint was filed. Rightness depends on the facts as they are today. And even the issue of constitutional rightness, if you take a look at the Regional Rail Reorganization Act case, the Supreme Court case there found constitutional rightness to develop after the case had been filed. I'd like to turn quickly also to the issue of prudential rightness. The one case that may be most important on the issue, which is the Susan B. Anthony List case. That's a case, a case that was decided in 2014 by the Supreme Court, where the court said, you know, we're really having trouble with the viability of the prudential rightness doctrine. Should it apply at all? Because how can you square that doctrine with the virtually unflagging requirement that the court, the federal courts decide cases within their jurisdiction? I think that throws open the vitality of the doctrine at all, in any case. But surely it shouldn't be stretched to a case like this that doesn't involve any constitutional avoidance principle or similar notion of avoiding difficult decisions. In fact, rather than it being prudential, it would be an enormous waste of time for this court to invoke prudential rightness considerations at this point. The case was filed 12 years ago. It's been through two trials. If you're going to apply prudential rightness, it would mean wiping out all of the proceedings that happened on remand, the trial, all the pre-trial motion practice. That's not prudential. And if we go to the- If the community could have raised or had raised sovereign immunity and the district court said no, that issue would be teed up in front of us, argued in a somewhat different way perhaps, but you'd have the same problem, which is that it's all well and good that we had years of litigation and reached a result that might well make sense. But if in fact the community couldn't be named as a party and has sovereign immunity against this claim, the plug gets pulled. And the community had the opportunity to raise that before Judge Teelborg and it didn't. So I'd like to turn to the- if you are going to apply prudential rightness considerations to the general considerations that the court looks at. I'm not sure prudential rightness really comes into the case as it's now postured. I think the problem really is it's the Article III issue of whether you didn't have it for the first however many years of litigation, can you bolt it on later? I don't think- I've got two colleagues here, but at this point the district court made a finding, yep, it's ripe. And if you accept the addition of the- what you're describing is a new claim, is there anything seriously unripe about that claim? I mean, I hear the argument that they don't have a developer in place, but the whole point of it is that the value of the property is so much enhanced by the ability to get access to it that that seems to make this a real case of controversy. I agree. So I would suggest maybe unless my colleagues are interested, that might not be an issue that's worthy of the little time you have left. Very good, Your Honor, unless- Unless there's nothing else you want to talk about. In this case, don't let me stop you. I would be happy now to move on to the summary judgment issues. So the community says that Judge Teelberg should have held off deciding the summary judgment issues until after trial, but it doesn't identify any material fact in dispute or any fact that would have mattered to the judge's decision. And as a matter of law, the judge was clearly correct in concluding that the transition of Section 16 from a commercial dairy to a rural housing development was consistent with congressional intent, and that the only way you could fulfill that plan was to allow for paving of the Murphy Road easement and installation of underground- Are there any housing subdivisions adjoining Section 16 right now? Adjoining Section 16, no. But one-half mile south of Section 16, you could see a huge residential development in the city of Maricopa that's visible from Section 16. And then if you just take a look to- Now, if you fly over Phoenix as you're landing, it's fascinating to see how some areas are enormously developed and some areas are not. I'm more familiar with other parts of the city, but this does seem to be a pretty substantial departure from at least the land that's within the Indian community. Well, the district court judge, after visiting the area, found that it really wasn't, Your Honor. And you can see why if I can describe it a little bit for you. So you've got the city of Maricopa, one-half mile south of Section 16, large housing development right there, visible from the property. You go two miles north of the property of Section 16, and you come to this road, it's in our brief, Casablanca Road. Well, along Casablanca Road, there's housing. But not only is there housing, if you take a look at the community's master plan, which was adopted by the community as its primary planning guide, the plan for that area, right just two miles north, is to build up to 10,200 houses at over three houses per acre. And then if you take a look besides the housing, if you just take a look at the roads that are going through District 5, which is the relevant district of the reservation that we're talking about, to the east, you've got I-10. The district of Maricopa, which is the relevant district of Maricopa, has a lot of housing. And the district court found there's something like 65,000 people. How about Murphy Road? How would traffic on Murphy Road change with this development? It would change. Because the road would be paved. Right. And would it connect these other byways? It would connect to Casablanca Road, which is two miles north. Casablanca Road is a paved road, and it connects. You can go on Casablanca and go from... Because I understood there's a lot of traffic on the state highway and the interstate, but it didn't sound like there was that much on Murphy Road, but there would be perhaps after this development. There will be additional traffic. You know, it's interesting. If you take a look at what's between Murphy Road from the northern end of Section 16 until Casablanca Road, all you're going to see is vacant land and some agriculture. And so what Judge Teelberg found is, you're not going to disturb anybody by traffic there. There isn't anybody. When you get to Casablanca Road, all of a sudden now there is housing, and there's going to be more housing if the master plan is carried out. And then if you take a look at Casablanca Road, so over here you've got State Route 347. It connects to that. There's something like 45,000 cars a day that cut through the reservation there. And then over here on the east side, you've got I-10, Interstate 10. You've got 65,000 cars traveling a day. So the notion that this is an abnormal development of Section 16 just isn't borne out by the facts. In any event, when you're looking at what's normal here, you have to do it in the context of what Congress intended when it transferred Section 16 in the first place and created the easement. So it was contemplating that the property would be used to support schools, and that it would be sold and used for full economic development. There's just no way you can have full economic development unless you allow some improvement of the easement. In Arizona, the property taxes go to schools? That's not in the record? I don't know. Thank you, Your Honor. Thank you very much. Thank you, Your Honor. I'd like to make two main points on rebuttal, both to the Article 3 jurisdiction issue, because that issue is dispositive of the case. If this Court finds that there was no Article 3 jurisdiction at the time, the first is about North Star. When asked what's their best case, counsel responded North Star. But if that's their best case, they fall far short of creating an equitable exception to the bedrock requirement of the Court's authority under Article 3 jurisdiction. And I would start with North Star itself. This is at page 1046. North Star itself says, it is enough to say that the rule as stated in Morongo, this Court's prior precedent, does not extend to supplemental pleadings filed pursuant to Rule 15d. By its terms, North Star is limited to the narrow context when you have a 15d and when it's an empty formality. Neither of those circumstances are present in this case, and as of course this Court knows, North Star itself was a hotly contested opinion with a dissenting opinion. We accept North Star as it is, but to extend it to this entirely new area without the two critical predicates for the decision would go far beyond it. And Judge Owens, I think you were exactly right on the empty formality point. That could not be farther from the truth in this case where tribal sovereign immunity has huge consequences if in fact this was a new claim. Now that brings me to the new claim point, which is the second point I want to address. It does not help the other side, even if you buy their argument that this is now transformed to an entirely different scope of easement claim. The reason it doesn't help them is because to bring an entirely new claim, you would normally have to bring a motion to amend the complaint. The District Court asked them to do that, gave them an opportunity to do that at Further Excerpts of Record 26. They never did that, and the reason why that's significant, just like you had the 15d in North Star, is because that would have been the opportunity for the community to object and say, no, we would be prejudiced under the terms of Rule 15d. You can't allow that amendment. We would be prejudiced because they should be forced to start a new lawsuit. We did not waive sovereign immunity for all time and certainly not with respect to New England. That's flatly on the table. There's an acknowledgment by Lyon's attorney that sovereign immunity is out there. The response we hear today is that it was waived. They had the opportunity to bring it up and didn't. Why was that not the case? That's not right, Your Honor, for one important reason. When they brought it up to the District Court, and this is at Excerpts of Record 305, this is their pleading to the District Court, they framed it as the same claim. So we don't dispute that the court had already found that tribal sovereign immunity was waived with respect to the original scope of easement claim, but when they brought it up, that they said this claim, and I'm going to quote from their pleading, although this court at ER 305, although this court in the Court of Appeals previously held that the dispute over the scope of the easement was not yet ripe, the facts on remand have changed substantially such that this issue is now ripe for review. And then the District Court, in its opinion, adopted that characterization. Here's what the District Court says at ER 48. The trustee argues that entry of final judgment is no longer appropriate in this case because the issue regarding the scope of easement has recently become ripe for adjudication. So the community, accepting their own characterizations in the District Court's characterization throughout this entire suit, it's not a new claim. It's just that the old claim has now become ripe due to the change in facts. Well, if the facts, if the circumstances have changed such that the door is opened for this claim, as Lyon argues, why isn't the community's argument saying, okay, well, the circumstances have changed, so now that we're going to come back and say sovereign immunity, which you court have decided previously was waived as to what was the state of affairs before, it's not waived anymore. So give us an adjudication as to why it is we're not immune from this lawsuit. I went through to see if that was ever teed up, and I couldn't find it. Is there a reason why it wasn't teed up? Yes, Your Honor. For the reason that I stated. The District Court had made clear that it to the scope of easement claim. If they had actually said, we want to bring a new claim, which you have to seek leave to do under Rule 15, a motion to amend the complaint to seek a new claim, then the community could have done two things. One, oppose that motion on grounds of prejudice, right, that we're actually impacted by this. And two, even if the District Court had then granted that 15A motion and allowed a new claim into the case, at that point, the community then could have objected and said, hey, look, our waiver of sovereign immunity might have gone to that old scope of easement claim, but it does not extend to this new claim. So the fact that they didn't follow the extremely narrow procedures for the extremely narrow exception to Article III jurisdiction, which is when you file an amended Rule 15 depleting or an amended complaint, that actually matters in this case. And so it would be an exceptional and unprecedented extension of North Star or any case that we know of to find that retroactive, that it could have cured the retroactively cured the defect in Article III jurisdiction. Thank you very much, counsel. This matter is submitted and both of you did an excellent job. In fact, I was disappointed the law students didn't stay to watch this counsel argue in this case because you both were excellent. But thank you very much, and we are in recess.
judges: Clifton, Owens, Antoon